PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARLON CLEMONS, | ) | |
| | ) | CASE NO.  1:19CV1340 |
| Petitioner, | ) | (1:17CR0110) |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | [Resolving ECF No. 54] |

Pending is *Pro Se* Petitioner Marlon Clemons' Motion to Vacate Sentence Under 28
U.S.C. § 2255 (ECF No. 54).[1]  The Court has been advised, having reviewed the record, the
parties' briefs,[2] and the applicable law.  For the reasons stated below, the § 2255 motion is
denied.

## I.  Background

In March 2017, a federal grand jury in the Northern District of Ohio returned a one-count
Indictment (ECF No. 1) against Petitioner.  Clemons was charged with being a felon in
possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Petitioner filed a Motion for the Preparation of a Pre-Plea Presentence Report (ECF No.
14), which the Court granted.  *See* Minutes of Proceedings dated June 5, 2017.  In July 2017, the
U.S. Pretrial Services & Probation Department filed a Criminal History Category Report

---

[1]  Unless otherwise indicated, the docket references will be to the criminal case,
not the related civil case, 1:19CV1340.

[2]  Petitioner did not file a permissive reply.  *See* Order (ECF No. 55).

(1:19CV1340)

regarding Petitioner.  The Report found a subtotal criminal history score of 11.  According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of 11 established a criminal history category of V.

Petitioner filed a Notice of Intent to Plead Guilty (ECF No. 25).  Clemons subsequently pleaded guilty without a written Plea Agreement before a magistrate judge to being a felon in possession of a firearm and ammunition.  *See* Transcript of Change of Plea Hearing (ECF No. 29); Non-document Minutes of proceedings dated September 29, 2017.  Having found that Petitioner's plea was knowingly, intelligently, and voluntarily made, the magistrate judge recommended that the district judge accept the plea.  *See* Report (ECF No. 28), entered on September 29, 2017.  The matter was set for sentencing on January 16, 2018.  *See* Notice of Sentencing (ECF No. 30).  On October 23, 2017, the undersigned adopted the magistrate judge's report and recommendation without objection and accepted Defendant's guilty plea.  *See* Order (ECF No. 31).

A final Presentence Investigation Report ("PSR") was filed in December 2017.  The PSR found a subtotal criminal history score of 10.  According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of 10 established a criminal history category of V. Petitioner's total offense level under the Guidelines was calculated as 17 after reducing three points from his base offense level because Clemons accepted responsibility for his crime.  Based upon a total offense level of 17 and a criminal history category of V, the advisory Guidelines imprisonment range was 46 to 57 months.  Trial counsel for Clemons objected to the inclusion of 13 cases shown in the "Other Criminal Conduct" section of the PSR, *i.e.*, paragraphs 33-45, as

(1:19CV1340)

those cases were "no billed," dismissed or resulted in an acquittal.  Charges in five of the cases

were dismissed or no billed because the victim initially cooperated with law enforcement and

then declined to appear in court.  Another case was dismissed when the victim was murdered.  A

case filed in January 2017 was dismissed because witnesses who previously identified Clemons

as the shooter in that murder recanted their original statements.  In response, the probation officer

stated as follows:

> Information reported in the Other Criminal Conduct section, which was verified
> by court records, may be relevant to sentencing for several reasons.
> Unadjudicated conduct similar to the instant offense behavior may indicate a
> propensity to engage in such conduct or support an inference that the defendant
> committed the instant offense as part of a pattern of criminal conduct.
> Unadjudicated conduct may also indicate the defendant's criminal history
> category is inadequate and could be relevant for the Court in deciding to
> depart/vary from the guideline range.  Additionally, unadjudicated conduct may be
> considered by the Federal Bureau of Prisons in making classification, designation,
> and programming decisions for the defendant.  Moreover, the probation officer
> submits that information in this section of the presentence investigation report was
> not used in determining the defendant's criminal history score.

The Government filed a Sentencing Memorandum (ECF No. 36) requesting both an

upward departure and an upward variance to the statutory maximum 120-month sentence, given

Petitioner's unique history and characteristics, which included violent recidivism, witness

intimidation, and dangers posed to law enforcement.  The Government's request for an upward

departure from criminal history category V to VI was based on Clemons' significant criminal

history, which included a robbery and physical assault of a woman, whom was later murdered

before the case could be prosecuted, as well as Petitioner shooting two victims while they were

walking away from a confrontation.  The Government also identified another prior conviction in

which Clemons had beaten a man into unconsciousness to support its requested departure.  *See*

(1:19CV1340)

ECF No. 36 at PageID #: 196-98 (citing U.S.S.G. §§ 4A1.2 and 4A1.3); *see also* ECF No. 49 at PageID #: 350.  The Government also requested an upward variance to the statutory maximum sentence of 120 months based upon the need to protect the public from Petitioner's criminal activity.  *See* ECF No. 36 at PageID #: 198-201; *see also* ECF No. 49 at PageID #: 354-56. Therefore, the Government's Sentencing Memorandum (ECF No. 36) put Petitioner on notice that the Government would be seeking a sentence well above the Guidelines range.

On January 16, 2018, the Court varied Clemons' sentence upwards to 80 months after conducting a nearly two-hour sentencing hearing.  *See* Judgment in a Criminal Case (ECF No. 37), entered on January 17, 2018; Transcript of Sentencing Proceedings (ECF No. 49).  The Court denied the Government's request to depart upward from criminal history category V to VI. *See* ECF No. 49 at PageID #: 373.  The Court did, however, exercise its discretion to vary upward under the 18 U.S.C. § 3553(a) sentencing factors.  The Court considered a national sentencing average[3] pursuant to § 3553(a)(6) as one of many factors in deciding to vary upwards and impose a sentence 23 months above the high-end of the Guidelines range.  *See* ECF No. 49 at PageID #: 362.

> . . . I am going to vary upwards.  I won't depart upwards.  I don't find that there's a guideline that speaks articulately to the need for the sentence to be imposed, but I think the 3553(a) factors do.
>                                        *   *   *

---

[3] U.S. Sentencing Comm'n, 2016 Sourcebook of Federal Sentencing Statistics, Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category (Table 14), https://www.ussc.gov/research/sourcebook/archive/sourcebook-2016 (last visited Sept. 28, 2022).

4

(1:19CV1340)

        So I will not depart. I will vary. And I will not vary upwards to 120 months, but as I indicated to you, Mr. Fatica, when I consider what's average, at least it was in 2016, for clients such as Mr. Clemons, those who are in a Category V, those convicted of a firearms offense, it's not a sentence within the range of 46 to 57 months, which I find is insufficient, it's far less than necessary to answer the question posed, what's the sufficient sentence, no greater than necessary, for someone with your history, including criminal history, which is abysmal, Mr. Clemons.

        I believe the 80-month term of incarceration is an appropriate answer, and I hereby impose a term of incarceration of 80 months. And I do that by way of a variance upwards. And to the extent the guidelines is a tool that remarks on that variance upwards, I increase your offense level from a 17 to a 20, and your criminal history category from V to VI, meaning I take you from 10 points to 13 points. The range there is 70 to 87 months, and I hereby impose a term of incarceration of 80 months.

ECF No. 49 at PageID #: 373-75. The Court overruled Petitioner's objection to the inclusion of the cases shown in paragraphs 33-45 of the PSR, and adopted those paragraphs because "the response by the probation officer is exactly on point." ECF No. 49 at PageID #: 316. The Court followed the rule laid down in *United States v. Bostic* requiring it to "ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." 371 F.3d 865, 872 (6th Cir. 2004). Trial counsel for Clemons stated only that he "object[ed] to the upward variance, [and] . . . that this case would have been appropriate to a guideline sentence of between 46 and 57 months." ECF No. 49 at PageID #: 390. Petitioner was advised of his right to appeal. *See* ECF No. 49 at PageID #: 387-88. The Court appointed an Assistant Federal Public Defender on behalf of Clemons for appeal purposes.

      Petitioner filed a direct appeal that challenged both the procedural and substantive reasonableness of his sentence and argued that the district court erred by improperly relying on an inaccurate national sentencing average to increase his sentence. In November 2018, the Court of

(1:19CV1340)

Appeals for the Sixth Circuit affirmed this Court's judgment.  *United States v. Clemons*, *757 Fed.Appx. 413 (6th Cir. 2018)* (ECF No. 52).

On June 4, 2019,[4] Petitioner filed the instant timely Motion to Vacate Sentence Under 28 U.S.C. § 2255 (ECF No. 54).

## II.  Discussion

### A.  Section 2255 Legal Standards

As recently stated by the United States Court of Appeals for the Sixth Circuit:

> . . .To obtain relief under § 2255, the movant "must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.' " *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). An evidentiary hearing "is required unless the record conclusively shows that the petitioner is entitled to no relief." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *see* 28 U.S.C. § 2255(b).

*Nix v. United States*, No. 20-6218, 2022 WL 815539, at *1 (6th Cir. March 15, 2022).

As stated in *Watkins v. United States*:

> It is well settled that a proper § 2255 motion does not reach alleged errors that are not of a constitutional or jurisdictional magnitude and that could have been reached by a direct appeal.  *Stone v. Powell*[,] 428 U.S. 465, 477 (1976).  To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).

---

[4]  Under Sixth Circuit precedent, the petition is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner dated his petition on June 4, 2019.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 Fed.Appx. 497, 498 n. 1 (6th Cir. 2006) (per curiam)).

(1:19CV1340)

"Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted." *Id.* at 164.

Nos. 5:11CR0536, 5:19CV2427, 2019 WL 6170832, at *2 (N.D. Ohio Nov. 20, 2019).

### B.    Evidentiary Hearing

In *Amr v. United States*, 280 Fed.Appx. 480 (6th Cir. 2008), the Court of Appeals for the Sixth Circuit held that a prisoner was not entitled to a hearing on an ineffective assistance of counsel claim when the claim was conclusively refuted by the record. *Id.* at 485-86.  "[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable [her] summarily to dismiss a § 2255 motion. . . ." *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977).  The Court finds that the within motion may be resolved without an evidentiary hearing because the judge's recollection, as well as the files and records in this case, conclusively show that Petitioner is not entitled to relief under § 2255.  *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003).

### C.    Grounds Asserted in the § 2255 Motion

Petitioner's motion presents two (2) separate grounds on which he claims that he is being held in violation of the Constitution, laws, or treaties of the United States.  For the reasons set forth below, neither of the grounds merit an evidentiary hearing or relief under 28 U.S.C. § 2255.

#### 1. Ground One

Ground One alleges ineffective assistance of counsel, both at sentencing and on appeal. The Supreme Court has established a two-part test for determining whether an attorney rendered ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  "First, the defendant

(1:19CV1340)

must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.  In attempting to establish that an attorney's performance was deficient, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*.  "To establish prejudice, Petitioner must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result." *Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003).  "When applying *Strickland*, if we can more easily dispose of an ineffective assistance claim based on lack of prejudice, we should follow that route." *Id*.

"Petitioners claiming ineffective assistance of counsel under *Strickland* have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).  "Proving prejudice is not easy" because the petitioner is confronted with the "high burden" of demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019) (citing *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)).  The petitioner must demonstrate the constitutional violation because it is "presumed that the lawyer is competent." *United States v. Cronic*, 466 U.S. 648 (1984).

(1:19CV1340)

For an ineffective assistance of appellate counsel claim, a court must first determine whether there is a reasonable probability that the defendant would have prevailed had his preferred argument been raised on appeal.  *See Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007).  The court must "then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* (quoting *McFarland v. Yukins*, 356 F.3d 688, 700 (6th Cir. 2004)).

**a.**

Petitioner deems his trial counsel's performance ineffective at sentencing for "failing to object when the Court surprised the defense with inaccurate information as one of the bases for its sentence.  In the middle of the sentencing hearing, the Court for the first time indicated that it was considering a national average as a factor in fashioning Petitioner's sentence." ECF No. 54 at PageID #: 426.  Clemons cites *United States v. Fleming*, 894 F.3d 764 (6th Cir. 2018) in support of his argument that he was prejudiced and his sentence should be vacated. *See* ECF No. 54 at PageID #: 427-28.  Unlike the case at bar in which the Court relied on the 2016 Guidelines Manual, 2016 Federal Criminal Code and Rules book, and Table 14 in the Sentencing Commission's Annual Sourcebook of Federal Sentencing Statistics, the district court in *Fleming* relied on a local news article that had been published online on Cleveland.com two days before the sentencing hearing and also indicated that the information in the article was central to its decision to double the Guidelines sentence to 120 months.  In *Fleming*, the Court of Appeals for the Sixth Circuit vacated and remanded for resentencing after finding the district court based its sentencing decision in a cocaine-possession case "in large part on a brief local news article"

(1:19CV1340)

about opioid overdose deaths that the district court failed to disclose to the parties before sentencing.  894 F.3d at 766.

Contrary to Petitioner's argument, Table 14 in the Sentencing Commission's Annual Sourcebook of Federal Sentencing Statistics is not "inaccurate information."  It contains sentencing data based on primary offense categories.  In *United States v. Stock*, 685 F.3d 621 (6th Cir. 2012), the Sixth Circuit explicitly approved district courts use of the exact statistical table the Court used in the case at bar, which contains sentencing data based on primary offense categories.  *Id.* at 629 n.6.  Indeed, in *Stock*, the Court of Appeals said this table "is a starting point for district judges in their efforts 'to avoid unwarranted sentence disparities among defendants with similar criminal records who have been found guilty of similar conduct.' " *Id.* (quoting 18 U.S.C. § 3553(a)(6)); *see also Clemons*, 757 Fed.Appx. at 419.

The Court in the instant case properly exercised its discretion to vary upward from the Guidelines term as 18 U.S.C. § 3553(a) allows sentencing courts to consider, *inter alia*, a defendant's criminal history and the need to protect the public in deciding whether to vary a defendant's sentence.  *See* §§ 3553(a)(1); (a)(2)(c).  *Clemons*, 757 Fed.Appx. at 420 (citing *United States v. Lanning*, 633 F.3d 469, 475 (6th Cir. 2011); *United States v. Musick*, 601 Fed.Appx. 414 (6th Cir. 2015)).  While a district court is required to give notice if it departs from the Guidelines range, it is not required to give notice of its intent to vary from the Guidelines range upon consideration of the factors in § 3553(a).  *See United States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015) (citing *Irizarry v. United States*, 553 U.S. 708, 714-15 (2008)); Fed. R. Crim. P. 32(h).  Thus, whether or not the Court provided advance notice of its intent to vary

10

(1:19CV1340)

upward, there was no deficient performance by Petitioner's trial counsel and no prejudice to

Clemons.  *See United States v. Temple*, No. 18-cr-20604, 2020 WL 7225776, at *4 (E.D. Mich.

Dec. 8, 2020) (denying § 2255 motion to vacate).

**b.**

Petitioner's claim of ineffective assistance of counsel on direct appeal is based on

counsel's failure "to argue or raise the issue in his opening brief that the district court erred by

failing to provide the defense advance notice that it was relying on a national average to vary

upwards." ECF No. 54 at PageID #: 429.  Also, Clemons is convinced "he would have won his

appeal" had appellate counsel raised the issue. ECF No. 54 at PageID #: 429-30.

Petitioner's appellate counsel argued in the opening brief for the direct appeal that the

district court improperly relied on an inaccurate national average sentence to increase Clemons'

sentence. Document 16 at Page: 18-21.[5]  In affirming the district court's sentencing judgment,

the Sixth Circuit stated:

> . . . [T]he trial court did not commit error, let alone plain error.  The court first
> mentioned the national sentencing average at Clemons' sentencing hearing after
> Clemons' counsel asserted that a person charged with the same conduct in *state*
> court would receive a shorter sentence.  Counsel's argument was based on
> 18 U.S.C. § 3553(a)(6), which requires courts to consider "the need to avoid
> unwarranted sentence disparities among defendants with similar records who have
> been found guilty of similar conduct."  Counsel admitted that this was "a little bit
> of an apples and oranges comparison."  Nevertheless, he persisted in arguing that
> Clemons was "similarly situated" to such state court defendants.  The court
> rejected that comparison, noting that penalties in federal court are greater because

---

[5]  The Court of Appeals did not, however, "consider Clemons' additional
argument that the district court erred by failing to provide him advanced notice that it was
relying on a national average.  Because Clemons did not make this argument in his
opening brief, he waived it." *Clemons*, 757 Fed.Appx. at 422 n. 9.

(1:19CV1340)

> defendants are often prosecuted there after they have been repeatedly prosecuted in state court.  And the court was right to do so because it would have been error for the court to have looked to state court defendants in measuring disparities under 18 U.S.C. § 3553(a)(6).  *See United States v. Malone*, 503 F.3d 481, 486 (6th Cir. 2007).  The court went on to explain,
>
>> [W]hen I consider what might lead to disparity, I look at other federal defendants.  And in Mr. Clemons' case . . . 80 months is the average for a federal defendant convicted of a firearms offense in Category V.  And that's what I would prefer to look at when I consider whether or not there is going to be some sentencing disparity, not state court.  My colleagues in state court do their heavy lifting.  We do our own here.
>
> (*See* R. 49, Sentencing Hr'g Tr. at PageID #362.)

*Clemons*, 757 Fed.Appx. at 418 (emphasis in original).

Petitioner contends the Court improperly relied on the average national sentence without providing that statistic to Clemons in advance of the sentencing hearing.  A sentence is procedurally unreasonable when, *inter alia*, the court relies on facts that surprise the defendant.  *See Coppenger*, 775 F.3d at 804.  Here, § 3553(a) expressly directs the court to consider national sentencing disparities.  *See* 18 U.S.C. § 3553(a)(6); *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008).  Therefore, Petitioner should not have been surprised that the Court did precisely that when it considered national statistics relevant to his offense and criminal history score, *i.e.*, the statistic in Table 14 in the 2016 Sentencing Commission's Annual Sourcebook of Federal Sentencing Statistics that 80 months is the average for a federal defendant convicted of a firearms offense in Category V.  *See United States v. Grant*, 794 Fed.Appx. 508, 510 (6th Cir. 2020) (district court's reliance on average national sentence without providing that statistic to defendant in advance of hearing was warranted).

12

(1:19CV1340)

Moreover, "a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same).  There has been no such intervening change in the law here.  Accordingly, Petitioner's claim of ineffective assistance of appellate counsel is also denied as previously litigated.

### 2. Ground Two

In Ground Two, Petitioner asserts a violation of his Due Process rights based on "the Court's failure to provide advance[ ] notice that it was relying on a national average to vary upwards."  ECF No. 54 at PageID #: 431.  According to Clemons, "[w]hen a court surprises a defendant with inaccurate information that he is not prepared to counter, then relies on that information to increase his sentence, it affects the defendant's substantial rights and is a violation of due process."  ECF No. 54 at PageID #: 426-27.  Petitioner likens his case to *Lankford v. Idaho*, 500 U.S. 110 (1991), in support of his argument.  In *Lankford*, the Supreme Court held that the defendant's due process rights were violated because he did not receive adequate notice that his sentencing hearing could result in the death penalty being imposed.  *Id.* at 122, 127.

In his direct appeal, the Sixth Circuit concluded that Clemons had "not met his burden to show that the district court's reliance on a national average affected his substantial rights." *Clemons*, 757 Fed.Appx. at 418.  Ground Two does not merit relief for the same reasons set forth above that Ground One fails on the merits.

13

(1:19CV1340)

## III.  Conclusion

Accordingly, the Court finds that Petitioner fails to demonstrate any ground on which he is entitled to relief under § 2255.  Petitioner Marlon Clemons' Motion to Vacate Sentence Under 28 U.S.C. § 2255 (ECF No. 54) is denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. §2253(c); Fed. R. App. P. 22(b).


IT IS SO ORDERED.


  September 28, 2022                           /s/ Benita Y. Pearson
Date                                        Benita Y. Pearson
                                            United States District Judge

14